**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| SANTRISE WHITE, BERCLINE MILCENT, MONIQUE SPRINGER, GIRAM SANCHEZ, DANIELLE PARIS, and JORGE LEZCANO, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:24-CV-00935-O |
| v. | § § | |
| AMERICAN AIRLINES, INC., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

**PLAINTIFFS' BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AS TO PLAINTIFF MONIQUE SPRINGER**

Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com
**The Sanford Firm**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

**Anderson Alexander, PLLC**
**Clif Alexander**
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren Braddy**
Texas Bar No. 24071993
Lauren@a2xlaw.com
**Maureen Villarreal**
Texas Bar No. 24046891
Maureen@a2xlaw.com
101 N. Shoreline Blvd., Ste. 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................iii

SUMMARY ..................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 3

    A.  American Airlines' ADA Policy.................................................................. 3

    B.  Ms. Springer's Disability ............................................................................ 3

    C.  Ms. Springer Notified American Airlines of Her Disability ........................... 4

    D.  American Airlines Forced Ms. Springer to Self-Accommodate Her Disability . ............ 6

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT .................................................................................................................. 7

    A.  Ms. Springer Notified American Airlines of Her Disability and Need for
        Accommodation ........................................................................................ 8

        1.  Ms. Springer's Chronic Migraines are a Disability Covered by the ADA ............... 8

        2.  The ADA Requires Only Plain-Language Notice That an Adjustment Is Needed
            for a Medical Reason.......................................................................... 9

        3.  The Record Shows Ms. Springer Repeatedly Notified American Airlines of Her
            Disability and the Need for an Accommodation ................................... 11

        4.  American Airlines' "Open, Obvious, and Apparent" Argument is Irrelevant ....... 13

    B.  American Airlines Failed to Engage in the Interactive Process and Improperly Routed
        Ms. Springer Exclusively to FMLA and MLOA ......................................... 14

        1.  When Ms. Springer Gave Notice of Her Disability and Need for
            Accommodation, American Airlines Was Required to Engage in a Good-Faith
            Interactive Process............................................................................ 14

        2.  American Airlines Slammed the Door on the Interactive Process by Telling Ms.
            Springer That FMLA and MLOA Was Her Only Option ..................... 15

C.  Ms. Springer Is a Qualified Individual Entitled to Discussion of Reasonable
        Accommodation, Including Reassignment...................................................... 17

    1.    Modest Schedule Modifications Are Reasonable Accommodations That Would
          Have Enabled Ms. Springer to Perform Her Essential Functions......................... 17

    2.    Even Assuming Arguendo No Accommodation Would Have Worked in the CSA
          Position, American Airlines Was Required to Consider Reassignment as an
          Accommodation ...................................................................................... 20

    3.    American Airlines Cannot Use the Distinction Between FMLA and the ADA as
          Both Sword and Shield .......................................................................... 21

CONCLUSION................................................................................................. 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acker v. General Motors, LLC,*
  853 F.3d 784 (5th Cir. 2017)......................................................................................... 15

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ........................................................................................................ 7

*Cannon v. Jacobs Field Servs. N. Am., Inc.,*
  813 F.3d 586 (5th Cir. 2016)........................................................................................... 9

*Carmona v. Southwest Airlines Co.,*
  604 F.3d 848 (5th Cir. 2010).......................................................................................... 19

*Christianson v. Boeing Co.,*
  No. C20-1349RSM, 2022 WL 1486432 (W.D. Wash. May 11, 2022)............................. 9

*Cruz v. R2Sonic, LLC,*
  405 F. Supp. 3d 676 (W.D. Tex. 2019) .................................................................... 14, 18

*Cutrera v. Bd. of Sup'rs of La. St. Univ.,*
  429 F.3d 108 (5th Cir. 2005)..................................................................................... 14, 17

*Delaval v. PTech Drilling Tubulars, L.L.C.,*
  824 F.3d 476 (5th Cir. 2016).......................................................................................... 18

*Dillard v. City of Austin, Tex.,*
  837 F.3d 557 (5th Cir. 2016).......................................................................................... 14

*EEOC v. Chevron Phillips Chem. Co., LP,*
  570 F.3d 606 (5th Cir. 2009)............................................................................... 11, 14, 17

*EEOC v. LHC Grp., Inc.,*
  773 F.3d 688 (5th Cir. 2014).................................................................................... 16, 21

*Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.,*
  730 F.3d 450 (5th Cir. 2013)........................................................................................... 8

*Guzman v. Allstate Assurance Co.,*
  18 F.4th 157 (5th Cir. 2021)............................................................................................ 7

*Harmon v. Collier,*
  158 F.4th 595 (5th Cir. 2025).......................................................................................... 19

*Lockhart v. Sys. Made Simple, Inc.,*
  66 F. Supp. 3d 847 (W.D. Tex. 2014) ...................................................................14, 17, 20

*Lundquist v. Univ. of South Dakota Sanford Sch. of Med.,*
  No. CIV 09–4147–RAL, 2011 WL 5326074 (D.S.D. Nov. 4, 2011) ............................. 10

*Martinez v. Lennox Int'l, Inc.,*
  No. CIV. A. 3:96-CV–0702, 1997 WL 209306 (N.D. Tex. Apr. 18, 1997) .................... 17

*Miceli v. JetBlue Airways Corp.,*
  914 F.3d 73 (1st Cir. 2019) ............................................................................................ 10

*Navarro v. Pfizer Corp.*,
  261 F.3d 90 (1st Cir. 2001) ................................................................................... 16

*Ness-Holyoak v. Wells Fargo Bank, Nat'l Ass'n*,
  No. 2:15–CV–544–DB, 2017 WL 2257339 (D. Utah May 22, 2017) ................................. 9, 10

*Patton v. Jacobs Eng'g Grp., Inc.*,
  874 F.3d 437 ................................................................................................ 11, 12

*Reeves v. Case W. Rsrv. Univ.*,
  No. 1:07–CV–1860, 2009 WL 3242049 (N.D. Ohio Sept. 30, 2009) ........................................ 9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) .............................................................................................. 7

*Taylor v. Principal Fin. Grp., Inc.*,
  93 F.3d 155 (5th Cir. 1996)..................................................................................... 12

*Way v. City of Missouri City*,
  133 F.4th 509 (5th Cir. 2025)............................................................................Passim

*Windham v. Harris Cnty.*,
  875 F.3d 229 (5th Cir. 2017)............................................................................... 11, 13

**Statutes**

42 U.S.C. § 12101 ....................................................................................................... 1

42 U.S.C. § 12102(1) .................................................................................................... 8

42 U.S.C. § 12102(4) .................................................................................................... 9

42 U.S.C. § 12111(8) ................................................................................................... 18

42 U.S.C. § 12111(9) ................................................................................................... 18

42 U.S.C. § 12111(9)(B) ............................................................................................... 20

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................... 7

**Regulations**

29 C.F.R. § 825.702(a) 18 ............................................................................................. 16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| SANTRISE WHITE, BERCLINE MILCENT, MONIQUE SPRINGER, GIRAM SANCHEZ, DANIELLE PARIS, and JORGE LEZCANO, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:24-CV-00935-O |
| v. | § § | |
| AMERICAN AIRLINES, INC., | § § | JURY TRIAL DEMANDED |
| Defendant. | § | |

**PLAINTIFFS' BRIEF**
**IN OPPOSITION TO DEFENDANT' MOTION**
**FOR SUMMARY JUDGMENT AS TO PLAINTIFF MONIQUE SPRINGER**

TO THE HONORABLE REED O'CONNOR:

Plaintiff Monique Springer submits this brief in opposition to Defendant American Airlines, Inc.'s Motion for Summary Judgment as to Monique Springer (ECF No. 107). The Motion should be denied because genuine issues of material fact exist for every element of her failure-to-accommodate claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[1]

**SUMMARY**

American Airlines has a history of failing to follow the ADA resulting in a previous Consent Decree involving the Equal Employment Opportunity Commission. Rather than engaging in the interactive process for reasonable accommodations, American Airlines systematically

---

[1] Use of General Artificial Intelligence: AI was used to help organize arguments.

1

funnels persons with disabilities through its Family and Medical Leave Act ("FMLA") and Medical Leave of Absence ("MLOA") processes.

American Airlines devotes nearly all of its Motion to its argument that Ms. Springer allegedly failed to request an accommodation. However, the relevant inquiry is not whether Plaintiff Springer submitted American Airlines' designated form or used the words "reasonable accommodation," but whether she sufficiently communicated that she needed a workplace adjustment for a medical reason. The undisputed evidence shows Ms. Springer provided medical documentation to American Airlines that identified her chronic migraines. Her rights under the ADA do not depend on completing American Airlines' administrative process when it already has actual knowledge of her condition, its effect on her attendance, and her need for accommodation. American Airlines' own records defeat its defense: when American Airlines learned that Ms. Springer's absences were caused by debilitating migraines, it actively intervened to remove her attendance points. By implementing this retroactive remedy, American Airlines demonstrated that it understood the connection between Ms. Springer's medical condition and her absences and that an exception to the attendance policy was both available and feasible. While American Airlines removed Ms. Springer's attendance points, it entirely abandoned its affirmative duty to address her continuing need for accommodation. After American Airlines failed to engage in the mandatory interactive dialogue, Ms. Springer was left completely unaccommodated. Fearful of disciplinary points, she was forced to self-accommodate—sacrificing her own health to protect her job.

**FACTUAL BACKGROUND**

**A. American Airlines' ADA Policy**

A federal court entered a Consent Decree requiring American Airlines to specifically comply with the ADA for three years for its employees as part of the resolution of a lawsuit filed by the EEOC. ECF No. 95 at 341-377.  After the Consent Decree ended, American Airlines reverted to ignoring the ADA. Under American Airlines' written ADA policy, the interactive process is not initiated unless an employee submits American Airlines' specific accommodation request form.  ECF No. 109 at 17.  However, American Airlines' own ADA Manager, Drew Cashatt, admitted during his deposition that employees are not legally required to fill out this form to initiate the interactive process.  Appx. 42, Cashatt Dep. 39:12-15.

American Airlines provides no training to its employees regarding how to initiate the accommodation process. Appx. 54, Cashatt Dep. at 51:2-10.  Further, American Airlines does not train its workforce on the accommodation process because it is "very complicated." Appx. 51-52, Cashatt Dep. at 48:22-49:4.

**B. Ms. Springer's Disability**

When Ms. Springer was nine years old, she was struck by a motor vehicle while walking on a sidewalk.  ECF No. 109 at 153 (citing Dep. at 44:1-8). The impact resulted in a traumatic brain injury and a two-month coma, after which she developed chronic migraines. *Id.* at 153 (citing Dep. at 44:1-6); 157 (citing Dep. at 48:19-23). Ms. Springer experiences early warning signs immediately preceding a migraine episode, including tinnitus (ringing in the ears), blurred vision, dry mouth, and head pain.  *Id.* at 175 (citing Dep. at 65:14-16).   When these early warning symptoms manifest, Ms. Springer can usually prevent the onset of a full-blown, debilitating migraine episode through immediate, brief intervention. *Id.* at 163 (citing Dep. at 54:8-12).

Specifically, if she is permitted to rest in a quiet, dark environment for 20 to 30 minutes, the symptoms subside, allowing her to avert a severe episode and resume her work duties. ECF No. 109 at 164 (citing Dep. at 55:2-7).

Ms. Springer began working at American Airlines on June 13, 2022, as a Customer Sales Representative in the Reservations Department. *Id.* at 132 (citing Dep. at 23:23-24); 150 (citing Dep. at 41:22-23). While Ms. Springer was in Reservations, her managers informally permitted her to take immediate workplace breaks whenever she felt the onset of a migraine episode. *Id.* at 336 (citing Dep. at 227:4-14); 370 (citing Dep. at 261:1-14). When American Airlines provided the necessary short breaks, Ms. Springer was fully capable of performing the essential functions of her position. *Id.*

Ms. Springer transferred on May 8, 2023, as a part-time Customer Service Agent ("CSA"), where she was responsible for gate operations. *Id.* at 151 (citing Dep. at 42:3-4). There, Ms. Springer suffered from debilitating migraine episodes that often could have been prevented from becoming debilitating if she was granted a 30-minute rest period. *Id.* at 186-187 (citing Dep. at 77-78:24-2). When she could not take that immediate break—or when a migraine began before her shift and could not be stopped—her symptoms sometimes progressed to the point that she could not work. *Id.* at 187 (citing Dep. at 78:10-13). In both scenarios, the severity of her medical condition forced Ms. Springer to miss full days of work. *Id.* American Airlines issued Ms. Springer attendance points for these medically necessary full-day absences.

**C. Ms. Springer Notified American Airlines of Her Disability**

On or about December 20, 2022, Ms. Springer requested intermittent FMLA leave. *Id.* at 433. Her request was denied on January 10, 2023, because she had not worked the requisite

4

number of hours. *Id*.  American Airlines failed to offer any alternative accommodations for her medical absences. *Id*.

On or about January 15, 2023, American Airlines held its first attendance discussion with Ms. Springer.  ECF No. 109 at 63. Ms. Springer shared details of her medical condition. *Id*.  Rather than determining whether she required an accommodation for her medical absences or initiating an interactive dialogue, American Airlines merely showed Ms. Springer how to track her hours in its corporate portal ("JetNet") so she could reapply for FMLA leave once she completed her first year of employment. *Id.* Despite explicitly acknowledging Ms. Springer's ongoing medical absences and her then-current ineligibility for FMLA, American Airlines' sole affirmative action was to instruct her to open a new administrative case and request a MLOA.  *Id*.  American Airlines never referred her to the ADA department or evaluated whether an accommodation was available under the ADA. *Id*.

Notably, according to American Airlines' own logs, Ms. Springer attended a comprehensive new hire orientation on May 26, 2023, following her transfer to the CSA position. *Id.* at 62. During the orientation, American Airlines took great care to detail its attendance expectations and disciplinary point thresholds. *Id*. Yet no one referenced the ADA, reasonable accommodations, or the internal process for requesting an exception to the attendance policy. *Id.*

Once Ms. Springer reached her one-year employment anniversary, she submitted several requests for FMLA leave that were supported by medical certifications completed by her physician.  *Id*. at 442-445; 490-492, 528-531.  Each certification specifically referenced her chronic migraines. *Id*.  American Airlines denied these requests, however, because Ms. Springer had transitioned to part-time status and did not meet the FMLA's statutory hourly threshold. *Id.* at 448; 477; 481-482. Despite receiving documentation detailing Ms. Springer's underlying medical

restrictions, not a single American Airlines representative ever suggested contacting or utilizing its ADA department. *Id.* at 336 (citing Dep. 227:16-17); 378 (citing Dep. 269:16-17).

On or about February 13, 2024,[2]  Ms. Springer participated in a "Termination Conference" with Gail McLean. ECF No. 109 at 60.  During that meeting, Ms. Springer explained that the majority of her absences were due to her chronic migraines.  *Id.* at 232 (citing Dep. 123:5-12). During their conversation, Ms. McLean concluded that Ms. Springer's absences "were out of control" or words to that effect.  *Id.* at. 233 (citing Dep. 124:19-20).  Ms. Springer then asked Ms. McLean if there was anything that she could do to help her. *Id.* (citing Dep. 124:22-23).  Ms. McLean responded, "Maybe [American Airlines] is not the place for you to work. You should think about going somewhere else" or words to that effect.  *Id.* at 234 (citing Dep. 125:6-12).  At no point did Ms. McLean address Ms. Springer's request for accommodations—including flexible leave or additional breaks—or instruct her on the requirement to complete an ADA accommodation request form. *Id.* at 233 (citing Dep. 124:22-25).

**D. American Airlines Forced Ms. Springer to Self-Accommodate Her Disability**

On or about March 8, 2024, Ms. McLean notified Ms. Springer that her MLOA requests had been approved, which resulted in the removal of her accrued attendance points and functionally accommodated her past medical absences. *Id.* at 60. However, American Airlines made no effort to establish a forward-looking, permanent accommodation framework for her recurring migraine-related absences or need for brief, immediate breaks at the onset of symptoms, which forced Ms. Springer to self-accommodate to avoid accruing new attendance points.  Ms.

---

[2] During Ms. Springer's deposition, she inadvertently stated that her formal attendance disciplinary meeting with Gail McLean occurred in February 2023. Review of the contemporaneous corporate records and timeline confirms that this attendance meeting actually took place in February 2024. The discrepancy regarding the year of the meeting does not alter the substance of the interaction, wherein American Airlines failed to initiate an ADA referral or engage in the interactive process.

Springer was trapped: she either had to force herself to work through debilitating migraine episodes or take off a minimum of five (5) consecutive days per the strict requirements of the MLOA policy. ECF No. 109 at 242 (citing Dep. at 133:20-25).

## LEGAL STANDARD

A motion for summary judgment must be denied unless the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). On summary judgment, courts "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes" because the "sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Way v. City of Missouri City*, 133 F.4th 509, 516 (5th Cir. 2025) (quoting *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021)) (cleaned up).

In considering the evidence to determine a motion for summary judgment, courts must draw all reasonable inferences in favor of the nonmoving party; not make any credibility determinations or weigh the evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmovant as well as evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent the evidence comes from disinterested witnesses. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

## ARGUMENT

To prevail on her failure-to-accommodate claim under the ADA, Ms. Springer must show that: (1) she is a qualified individual with a disability; (2) the disability and its limitations were

7

known by American Airlines; and (3) American Airlines failed to make reasonable accommodations for those known limitations. *Feist v. La. Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013); *Way*, 133 F.4th at 517. As shown below, the record contains more than sufficient evidence to allow a reasonable jury to find each of these elements satisfied.

American Airlines' Motion for Summary Judgment rests on three legally and factually flawed arguments: (1) Ms. Springer never requested an accommodation; (2) American Airlines lacked notice of Ms. Springer's disability and limitations; and (3) Ms. Springer was not a qualified individual due to her functional limitations. Each argument improperly resolves disputed facts in American Airlines' favor and disregards evidence from which a reasonable jury could find that Ms. Springer communicated a disability-related need for accommodation. American Airlines relies on a string of citations disconnected from the record. The record evidence viewed in Ms. Springer's favor, and controlling Fifth Circuit case law, show that Ms. Springer was a qualified individual who provided sufficient plain-language notice of her medical condition and its limitations, and that American Airlines ignored those limitations and refused to engage in the good-faith interactive process, instead routing her exclusively through FMLA and MLOA leave. Although American Airlines retroactively removed migraine-related attendance points, demonstrating that it understood the connection between Ms. Springer's condition and her absences and that relief from the attendance policy was feasible, it made no efforts to engage in the interactive process and accommodate Ms. Springer going forward. Because genuine disputes of material fact exist as to each element, summary judgment must be denied.

### A. Ms. Springer Notified American Airlines of Her Disability and Need for Accommodation

#### 1. Ms. Springer's Chronic Migraines Are a Disability Covered By the ADA

A person is disabled under the ADA if they have an "impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The ADA was amended in 2008, and courts must construe the term "substantially limits" "in favor of broad coverage." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting 42 U.S.C. § 12102(4)). Ms. Springer's chronic migraines substantially limit multiple major life activities. When a migraine occurs, she experiences nausea, visual disturbance, tinnitus, intense pain, and sensitivity to light, all of which substantially limit her ability to see, concentrate, think, communicate, and work.   ECF No. 109 at 167 (citing Dep. 58:12-15); 174 (citing Dep. 65:11-12); 444-445. Moreover, the ADA expressly provides that an episodic impairment constitutes a disability if it would substantially limit a major life activity when active.   American Airlines does not dispute that Ms. Springer had a disability covered by the ADA.   ECF No. 108 at 32.

### 2. The ADA Requires Only Plain-Language Notice That an Adjustment Is Needed for a Medical Reason

American Airlines improperly attempts to shift the legal burden onto Ms. Springer by focusing its Motion on the lack of a formal accommodation request. The relevant inquiry is not whether a formal demand was made, but whether American Airlines had sufficient notice of Ms. Springer's disability to trigger its legal obligations.

American Airlines misstates the law in its contention that Ms. Springer was required to follow its rigid formal accommodation process to initiate the interactive process. In every case American Airlines cites in support, either it was established the plaintiff was aware of their employer's formal accommodation process, or the plaintiff simply never disclosed their disability. In *Reeves, Christianson,* and *Ness-Holyoak*, it was clearly established the plaintiff was aware of the reasonable accommodation process. *Reeves v. Case W. Rsrv. Univ.*, No. 1:07–CV–1860, 2009 WL 3242049, at *12 (N.D. Ohio Sept. 30, 2009) (the plaintiff clearly knew of the process, because

she had "completed the very form necessary to comply with that procedure in the past."); *Christianson v. Boeing Co.*, No. C20-1349RSM, 2022 WL 1486432, at *3 (W.D. Wash. May 11, 2022) ("[I]t [was] clear from the record that Mr. Christianson knew of Boeing's process for requesting an accommodation—he simply did not do so in this instance."); *Ness-Holyoak v. Wells Fargo Bank, Nat'l Ass'n*, No. 2:15–CV–544–DB, 2017 WL 2257339, at *2 (D. Utah May 22, 2017) (the plaintiff "admit[ted] that she knew of the required procedure, and that she had previously followed the procedure"). Nothing in the record demonstrates that Ms. Springer was aware of the accommodation process, or that American Airlines attempted to make her aware of the process once she requested accommodation, prior to her bringing this lawsuit—at which point American Airlines was undoubtedly made aware of her need for accommodation and still failed to accommodate her.

When the plaintiff asked for a reasonable accommodation in *Lundquist,* the employer provided her with a form to fill out, requested documentation, and offered to meet to discuss the form. *Lundquist v. Univ. of South Dakota Sanford Sch. of Med*., No. CIV 09–4147–RAL, 2011 WL 5326074, at *8–9 (D.S.D. Nov. 4, 2011). The plaintiff broke down the interactive process by not filling out the form. American Airlines, on the other hand, did not inform Ms. Springer that she needed to fill out a form and instead intentionally misled her rights. That was when the interactive process broke down.

In *Bresloff-Hernandez* and *Milceli*, failing to fill out the official form was merely one way the plaintiff failed to request an accommodation; more generally, the plaintiffs never specified their disabilities to their employers. *Bresloff-Hernandez v. Horn*, No. 05 CIV 0384(JGK), 2007 WL2789500, at *10 (S.D.N.Y. Sept. 25, 2007); *Miceli v. JetBlue Airways Corp*., 914 F.3d 73, 82–

83 (1st Cir. 2019). In contrast, Ms. Springer repeatedly made American Airlines aware of her disability.

An employee "need not utter any magic words" to invoke the ADA's accommodation requirement. *Way*, 133 F.4th at 519 (quoting *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017)). The employee "need only point to enough evidence in the record to allow a jury 'to infer the [employer's] knowledge of the limitations experienced by the employee as a result of [her] disability.'" *Id.* (quoting *Patton*, 874 F.3d at 444–45). The employee "does not have to mention the ADA or use the phrase 'reasonable accommodation.' Plain English will suffice." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009). All that is required is that the employee "explain that the adjustment in working conditions or duties [she] is seeking is for a medical condition-related reason." *Id.* Moreover, the employee "need not request, or even know, the particular reasonable accommodation [she] ultimately requires." *Way*, 133 F.4th at 517 (quoting *Windham v. Harris Cnty.*, 875 F.3d 229, 237 n.11 (5th Cir. 2017)). "Instead, that judgment is best determined through a flexible, interactive process involving both the [employee] and the [employer]." *Id.* (cleaned up). Thus, the absence of American Airlines' designated accommodation form is not dispositive where the evidence permits a jury to find that Ms. Springer connected her request for help with attendance issues to her chronic migraines. This statutory obligation prevents the employer from escaping liability merely by claiming the employee did not fill out the right form or use the right words, as American Airlines attempts to do here.

### 3. The Record Shows Ms. Springer Repeatedly Notified American Airlines of Her Disability and Need for Accommodation

Ms. Springer did everything the ADA requires. She informed American Airlines of her disability. She provided medical documentation identifying her chronic migraines and the recurring need for medically necessary absences.  See ECF No. 109 at 442-445; 490-492; 528-

531. She told American Airlines in her attendance meetings that her absences were caused by her medical condition. *Id*. at 63; 342 (citing Dep. 233:6-9).   At her first attendance meeting, Ms. Springer was informed of MLOA leave because American Airlines knew that her attendance problems were connected to a medical condition. See ECF No. 109 at 63. Ms. McLean herself directly discussed MLOA at the termination meeting because she was aware that Ms. Springer was absent for medical reasons. *Id*.  Furthermore, Ms. McLean's remark that American Airlines may not be a good fit appeared to prematurely foreclose the interactive process, leaving the impression that no other alternatives existed.   This evidence allows a jury to "infer [American Airlines'] knowledge of the 'limitations experienced by [Ms. Springer] as a result of [her] disability,'" even if she did not explicitly request an exception to the attendance policy. *Patton*, 874 F.3d at 444–45 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).

Ms. Springer's communications with American Airlines are at least as sufficient as the notice found adequate in *Way v. City of Missouri City*. There, the plaintiff merely told her supervisor in an email that she was "developing anxiety" and had scheduled a medical appointment and welled up in tears the next day in her supervisor's office. *Way*, 133 F.4th at 514, 519. The Fifth Circuit held those facts were sufficient to allow a jury to infer the employer's knowledge of the plaintiff's disability and limitations. *Id.* at 519–20.  Here, American Airlines received medical documentation regarding Ms. Springer's chronic migraines, knew that those migraines caused recurring absences, discussed medical leave with her, and received Ms. Springer's explicit request for help with the resulting attendance consequences. A reasonable jury could therefore find that American Airlines knew both of her condition and of her need for an accommodation.

Here, American Airlines' own conduct—specifically, the retroactive removal of migraine-related attendance points after reviewing Ms. Springer's medical absences—further supports the

12

inference that American Airlines understood the connection between her migraines, her absences, and her request for relief from the attendance policy. Although removing those points addressed past absences, it did not resolve her continuing need for brief workplace breaks or relief from attendance points for future migraine-related absences.

American Airlines separately argues that Ms. Springer's MLOA requests did not provide notice because an MLOA request indicates only that an employee cannot work for a defined period. ECF No. 108 at 28. This argument ignores the numerous occasions Ms. Springer made American Airlines aware of her chronic migraines and need for accommodation. American Airlines looks at the MLOA requests in a vacuum, but when the record is looked at as a whole (as it must be), the evidence shows that the MLOA leave requests were just one of many pleas from Ms. Springer for accommodation that American Airlines ignored.

### 4. American Airlines' "Open, Obvious, and Apparent" Argument Is Irrelevant

American Airlines attempts to limit the case to the "open, obvious, and apparent" exception from *Windham v. Harris County*, 875 F.3d 229 (5th Cir. 2017). That exception applies only where an employee has not otherwise provided sufficient notice of her disability and resulting limitations. *See Way*, 133 F.4th at 519. Here, Ms. Springer did give notice. Ms. Springer presented medical documentation identifying her chronic migraines, repeatedly informed American Airlines that her absences were caused by those migraines, and asked for help when faced with termination due to those absences. Because there is ample evidence from which a reasonable jury could conclude that American Airlines had actual notice of Ms. Springer's disability and its impact on her ability to comply with the attendance policy, the "open, obvious, and apparent" exception has no application here.

13

**B. American Airlines Failed to Engage in the Interactive Process and Improperly Routed Ms. Springer Exclusively to FMLA and MLOA**

**1. When Ms. Springer Gave Notice of Her Disability and Need for Accommodation, American Airlines Was Required to Engage in a Good-Faith Interactive Process**

Once Ms. Springer informed American Airlines that she was disabled and that her absences were caused by her disability, American Airlines "became 'obligated by law to engage in an interactive process: a meaningful dialogue with the employee to find the best means of accommodating that disability.'" *Way*, 133 F.4th at 520 (quoting *Chevron Phillips*, 570 F.3d at 621). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005). The process must be "ongoing" and "reciprocal." *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 695 (W.D. Tex. 2019) (quoting *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016)). "If the employer does not engage in the good faith interactive process, which includes an employer terminating an employee instead of considering the accommodation request, the employer violates the ADA." *Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847, 861 (W.D. Tex. 2014).

American Airlines was required to engage in the interactive process when it became aware of Ms. Springer's disability and need for accommodation, and it did not. *See Chevron Phillips*, 570 F.3d at 621. Instead, the evidence shows that American Airlines repeatedly directed Ms. Springer to FMLA and MLOA procedures without evaluating whether a brief workplace break, intermittent leave, or relief from attendance points could reasonably accommodate her migraines. Nor did American Airlines seek clarification regarding the frequency of her episodes, the

14

effectiveness of a short break, or the circumstances under which she would need to miss an entire shift. A reasonable jury could therefore find that American Airlines' failure to initiate any meaningful dialogue prevented identification and implementation of an effective accommodation.

### 2. American Airlines Slammed the Door on the Interactive Process by Telling Ms. Springer That FMLA and MLOA Was Her Only Option

Rather than engage in the dialogue the ADA requires, American Airlines shut the door before it ever opened. When Ms. Springer told American Airlines that her need for flexible leave was caused by her medical condition, thereby requesting an accommodation, no one referred her to American Airlines' ADA team, provided her with a Reasonable Accommodation form, or engaged in any dialogue about accommodating her medical condition and continuing need for flexible leave. ECF No. 109 at 60-63; 233 (citing Dep. 124:22-25); 336 (citing Dep. 227:16-17); 378 (citing Dep. 269:16-17). Instead, during each attendance discussion with Ms. Springer, American Airlines funneled her right back to FMLA and MLOA. *Id.* American Airlines never offered to engage in the interactive process statutorily required by the ADA.

American Airlines mistakenly relies on *Acker v. General Motors, LLC*, 853 F.3d 784 (5th Cir. 2017), to argue that Ms. Springer never requested an accommodation. *Acker* stands for the narrow proposition that an employee's independent decision to use or request FMLA leave does not automatically double as a request for a reasonable accommodation under the ADA. Ms. Springer does not dispute that distinction. *Id; see also Way*, 133 F.4th at 520–21 ("an employer's obligation to provide reasonable accommodations under the ADA is distinct from its obligations under the FMLA"). But American Airlines improperly treats that distinction as establishing that an employee's communications can never be treated as a request for accommodation if made in connection with FMLA or medical leave. This argument actively encourages American Airlines

15

to continue to proactively funnel employees toward FMLA requests, so as to avoid fulfilling its duties under the ADA.

Here, Ms. Springer did more than independently submit an unexplained request for leave. She provided medical documentation identifying chronic migraines, informed American Airlines that those migraines caused her recurring absences, and asked for help when the resulting attendance points placed her job in jeopardy. See ECF No. 109 at 60-63; 442-445; 490-492; 528-531. American Airlines cannot ignore those communications merely because they occurred alongside FMLA and MLOA requests.

When Ms. Springer informed American Airlines about her medical condition and sought relief from the consequences it was causing, American Airlines had a "statutory duty to at least discuss accommodation." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 699 (5th Cir. 2014). Instead, American Airlines routed Ms. Springer exclusively through leave programs that it knew either were unavailable to her or did not address the intermittent nature of her condition. American Airlines told her that FMLA/MLOA was her only option and even suggested that American Airlines may not be a good fit because of her disability, ending the interactive process before it could begin.

Congress contemplated overlap between the FMLA and ADA and required employers to "provide leave under whichever statutory provision provides the greater rights to employees." 29 C.F.R. § 825.702(a). American Airlines' refusal to consider the separate and potentially greater protections available under the ADA, and its insistence that FMLA and MLOA was the only path, is directly contrary to the regulation's requirement that the statutes be applied independently. As the First Circuit explained in a passage American Airlines itself cites, "the ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Navarro v. Pfizer Corp.*,

16

261 F.3d 90, 101 (1st Cir. 2001). It is precisely because the statutes offer disparate relief that American Airlines could not satisfy its ADA obligations merely by directing Ms. Springer to the FMLA and MLOA procedures.

American Airlines also improperly relies on *Martinez v. Lennox Int'l, Inc.*, No. CIV. A. 3:96-CV–0702, 1997 WL 209306, at *5 (N.D. Tex. Apr. 18, 1997), to argue that it had no duty to notify or educate Ms. Springer regarding her rights under the ADA. That argument mischaracterizes Ms. Springer's position. Ms. Springer does not contend that American Airlines was required to deliver generalized ADA instructions before she communicated any disability-related need. She contends that American Airlines is responsible for the systemic breakdown of the interactive process because it did not respond appropriately after she disclosed that her migraines were causing the absences for which she faced discipline and asked for help. American Airlines' failure to train employees regarding its accommodation procedure further undermines its attempt to rely on Ms. Springer's failure to submit the company's designated form. Once notice was given, American Airlines had a duty to engage. *Cutrera*, 429 F.3d at 112. At the very least, this is a question of fact best reserved for a jury. *See Lockhart*, 66 F. Supp. 3d at 862.

**C. Ms. Springer Is a Qualified Individual Entitled to Discussion of Reasonable Accommodations, Including Reassignment**

American Airlines' last argument is that, if Ms. Springer's functional limitations were as described in her testimony, then she was not a "qualified individual" under the ADA. ECF No. 108 at 33-36.  The argument ignores the broader statutory duties of the ADA.

**1. Modest Schedule Modifications Are Reasonable Accommodations That Would Have Enabled Ms. Springer to Perform Her Essential Functions**

The Fifth Circuit has expressly rejected the "catch-22" American Airlines tries to deploy: defendants cannot argue that an employee's need for accommodation to perform the essential

17

functions itself renders her unqualified. *Chevron Phillips*, 570 F.3d at 619 (rejecting argument that would create an "impossible catch-22"). The purpose of the reasonable-accommodation framework is to identify accommodations that enable the qualified individual to perform the essential functions. 42 U.S.C. §§ 12111(8)–(9).

Ms. Springer's testimony establishes that modest accommodations would have allowed her to perform the essential function of the CSA position. She testified that, had American Airlines granted 30-minute breaks at the airport, she would not have needed to take days off at home to recover. ECF No. 109 at 186-187 (citing Dep., at 77-78:24-2.)  The Fifth Circuit recognizes that "[t]ime off, whether paid or unpaid, can be a reasonable accommodation." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016); see also 42 U.S.C. § 12111(9) (reasonable accommodations may include "part-time or modified work schedules"). Whether brief breaks, schedule modifications, or modest attendance exceptions would have allowed Ms. Springer to perform essential functions without undue hardship is a quintessential fact question for the jury. *Way*, 133 F.4th at 519–20; *Cruz*, 405 F.Supp. 3d at 695–96.

American Airlines' reliance on *Villarreal v. Tropical Texas Behavioral Health* and similar cases is misplaced because in those cases, the employee's inability to attend work could not be cured by any accommodation. Here, Ms. Springer's testimony, viewed in the light most favorable to her, establishes the opposite: a brief break would have prevented most migraine episodes from becoming disabling and substantially reduced the need for full-day or extended absences. ECF No. 109 at 186-187 (citing Dep., at 77-78:24-2.)   American Airlines instead assumes that every migraine would require Ms. Springer to leave work for days or weeks, despite her testimony that immediate intervention was successful approximately 85 to 90 percent of the time. *Id.* at 164 (citing Dep. 55:14-21).

The Fifth Circuit's decision in *Carmona v. Southwest Airlines Co.*, 604 F.3d 848 (5th Cir. 2010), is particularly instructive because it involves the same industry and a closely analogous attendance-points structure. There, a flight attendant with psoriatic arthritis required intermittent leave several times a month and exceeded Southwest's attendance-point cap. *Id.* at 850–53. The Fifth Circuit affirmed a jury verdict that the plaintiff was a qualified individual notwithstanding his attendance lapses, holding that "even if we assume that attendance was an essential function of [the plaintiff's] job, Southwest's own measure of whether or not a flight attendant's attendance was adequate was its attendance policy." *Id.* at 859–60.

Here, American Airlines itself approved Ms. Springer for intermittent MLOA at least three times and retroactively removed attendance points associated with migraine-related absences. ECF No. 108 at 32.  That evidence undermines American Airlines' contention that any unpredictable migraine-related absence was necessarily incompatible with the CSA position and demonstrates that its attendance rules already permitted medically excused absences under appropriate circumstances. *Carmona*, 604 F.3d at 859–60. The Fifth Circuit recently reaffirmed that whether an employee is qualified despite intermittent absences caused by disability is a jury question where the employer's own leave structure suggests the absences would have been deemed adequate. *See Harmon v. Collier*, 158 F.4th 595, 609–11 (5th Cir. 2025) (discussing *Carmona*, 604 F.3d at 859–60).

American Airlines also offers no individualized analysis showing that a 30-minute break, limited intermittent leave, or a narrowly tailored attendance-policy exception would impose an undue hardship. Instead, it relies on generalized assertions regarding the time-sensitive nature of airport operations and assumes the most extreme possible manifestation of Ms. Springer's condition. Whether American Airlines could have accommodated Ms. Springer through brief

19

breaks, schedule modifications, or limited disability-related absences without undue hardship is a fact question for the jury.

### 2. Even Assuming Arguendo No Accommodation Would Have Worked in the CSA Position, American Airlines Was Required to Consider Reassignment as an Accommodation

Because American Airlines routed Ms. Springer exclusively to the FMLA/MLOA departments, it never conducted a good-faith search for alternative reasonable accommodations. Even assuming *arguendo* that no accommodation would have allowed Ms. Springer to perform the essential functions of the CSA position at the gates, that does not automatically extinguish her status as a qualified individual under the ADA. American Airlines was required to consider reassignment to a vacant position as an accommodation of last resort. See 42 U.S.C. § 12111(9)(B) (reasonable accommodation "may include" reassignment to a vacant position).

Notably, American Airlines admits, "Springer experienced migraines while working in the Reservations Department, but she was able to take occasional breaks and manage her symptoms." Defs. Br. at 12 (citing ECF No. 109 at 328-329 (citing Dep. at 226:25-227:14.). Thus, by American Airlines' own account, Ms. Springer successfully performed her duties in a position that permitted the very accommodation she contends was effective.

Rather than engaging in the interactive process to determine whether a comparable vacant position existed, American Airlines never reached that stage because it treated FMLA and MLOA as Ms. Springer's exclusive options. A reasonable jury could conclude that American Airlines' failure to explore reassignment resulted directly from its failure to engage in the interactive process required by the ADA. *See Lockhart*, 66 F. Supp. 3d at 861–62.

**3. American Airlines Cannot Use the Distinction Between FMLA and the ADA as Both Sword and Shield**

American Airlines argues that an FMLA "serious health condition" is not synonymous with an ADA "disability," Defs. Br. at 29 (quoting *Franklin*, ECF No. 109 at 186-187 (citing Dep., at 77-78:24-2). and Ms. Springer agrees. But that is exactly why American Airlines' response to Ms. Springer's medical disclosures—routing her exclusively to FMLA/MLOA—did not discharge its separate obligations under the ADA. When Ms. Springer made American Airlines aware of the limitations caused by her disability, American Airlines had an independent, statutory duty to "at least discuss accommodation." *LHC Grp.*, 773 F.3d at 699.

American Airlines cannot rely on the FMLA/ADA distinction to argue that Ms. Springer's medical-leave communications were legally irrelevant to notice under the ADA while simultaneously relying on those same leave records to establish the nature and extent of her limitations. Although a request for FMLA or MLOA does not automatically constitute an ADA accommodation request, the medical documentation and related communications accompanying those requests remain relevant evidence of American Airlines' knowledge of Ms. Springer's condition, limitations, and need for an adjustment. American Airlines routed Ms. Springer's medical condition exclusively through FMLA/MLOA channels, thereby preventing any consideration of distinct ADA accommodations.

## CONCLUSION

The record contains sufficient evidence to allow a reasonable jury to find for Ms. Springer on every element of her ADA failure-to-accommodate claim. At a minimum, genuine disputes of material fact exist regarding whether American Airlines had notice of Ms. Springer's disability-related limitations, whether it failed to engage in the interactive process, whether the requested accommodations were reasonable, and whether Ms. Springer could perform the essential functions

of her position with accommodation. Plaintiffs request that the Court deny Defendant's Motion for Summary Judgment as to Plaintiff Monique Springer.

WHEREFORE, Plaintiff Monique Springer respectfully requests that the Court deny Defendant's Motion for Summary Judgment in its entirety and grant Plaintiff all other relief to which she may be justly entitled.