**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SANTRISE WHITE, ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-CV-00935-O** |
| | § | |
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Before the Court are Defendant American Airlines, Inc.'s Motion for Summary Judgment (ECF No. 84), Plaintiff Giram Sanchez Figueroa's Response (ECF No. 97), Defendant's Reply (ECF No. 113), Defendant's Motion to Strike Plaintiff's Deposition Errata (ECF No. 114), Plaintiff's Response (ECF No. 122), and Defendant's Reply (ECF No. 126). Having considered the parties' briefing and the applicable law, the Court **GRANTS** Defendant's Motion to Strike and its Motion for Summary Judgment.

## I.   BACKGROUND[1]

This case presents an employment discrimination dispute between a group of current and former employees, including Sanchez, and their employer ("American"). Sanchez is a former employee of American, who worked as a Customer Assistance Representative at the Dallas Fort Worth International Airport. He suffers from major depression, PTSD, and generalized anxiety, the symptoms of which cause him numerous physical symptoms such as nausea, vomiting, and other related gastrointestinal issues. These symptoms sometimes caused Sanchez to need to step

---

[1] The Court's recitation of the facts is taken from the parties' summary judgment briefing.

away from his job for either extended breaks during his shift or multi-day long absences. His symptoms did not occur regularly, and these absences were often unexpected and unplanned.

American, as a nationwide employer, is subject to various employment laws, including the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). However, not every American employee is covered under the FMLA due to certain requirements around hours worked per year and time employed at American. Because of this, American provides a Medical Leave of Absence ("MLOA") policy that allows an employee, who might not qualify for FMLA leave, to receive excused absences from American's various attendance policies.

The parties do not dispute that Sanchez sought either FMLA or MLOA leave six times during his tenure with American. However, both FMLA and MLOA require the requesting employee to submit certification paperwork from a medical provider before granting each leave request. Sanchez submitted the required paperwork only once. For this request, he was granted FMLA leave. For the other five, his absences were not excused, which resulted in the accrual of attendance "points." American's different positions have different requirements for attendance. Sanchez's position as a Customer Assistance Representative had a progressive attendance policy, meaning that as an employee accrues more unexcused absences, he receives progressively worse disciplinary action, up to and including termination. Sanchez was terminated pursuant to this attendance policy in June 2024.

Plaintiffs filed suit in September 2023 in the Western District of Texas. The case was transferred to this Court in September 2024. The Plaintiffs filed an amended complaint, adding Sanchez, in March 2025. The Plaintiffs moved to certify a class of American employees who, as alleged, suffered discrimination under the ADA. The Court denied class certification, finding that the class was not ascertainable and that the six named plaintiffs were too disparate in job title,

2

disability, and proposed accommodation to warrant class certification. The six plaintiffs then proceeded on an individual basis. Sanchez brings a solitary claim against American: the failure to accommodate his anxiety, an unlawful act under the ADA.[2] American has moved for summary judgment.[3] The Motion is ripe for review.

## II.   LEGAL STANDARD

A movant is entitled to summary judgment if by the pleadings and evidence it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*

A party seeking summary judgment must inform a court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

## III.   ANALYSIS

Defendant moves for summary judgment on the basis that Plaintiff's claim under the ADA for failure to accommodate his anxiety is doomed because he never requested an accommodation.[4]

---

[2] Amended Compl., ECF No. 39.
[3] *See* Def.'s Mot. Summ. J., ECF No. 84.
[4] Def.'s Brief in Supp. of Mot. Summ J. 4, ECF No. 85.

Sanchez responds that he repeatedly notified American of his disability and his need for accommodation and accuses American of failing to engage in the interactive process by "forcing" him to take FMLA or MLOA leave instead of exempting him from the attendance policy for any absence related to his anxiety. In support of this argument, Sanchez relies on a deposition errata that makes numerous material changes to his deposition testimony. American has moved to strike this deposition errata as untimely.[5] In reply, American argues that Sanchez's position on requesting his accommodation is self-defeating as the only evidence in the record reflecting he made the request is his untimely errata.[6]

For the reasons explained below, the Court **GRANTS** American's Motion for Summary Judgment as to Sanchez's claim.

### A. Motion to Strike Untimely Deposition Errata

American argues that most of Sanchez's response to its Motion for Summary Judgment relies on assertions that were not made during his sworn deposition testimony but were made nearly four months later in an untimely errata sheet.[7] Sanchez makes a series of arguments in opposition: "Veritext's automated notification reached counsel's inbox . . . and the link expired before the transcript was downloaded" to argue that the months late errata was mere attorney inadvertence and "Rule 30(e)'s thirty-day period exists to protect the integrity and finality of the transcript, not to arm litigants with gotcha motions against testimony they have long possessed" to argue that American's motion to strike the errata should have come prior to Sanchez's reliance on

---

[5] Def.'s Mot. to Strike, ECF No. 114.
[6] Def.'s Reply Mot. Summ. J. 8, ECF No. 113.
[7] Def.'s Mot. to Strike 2, ECF No. 114.

it within the summary judgment briefing.[8] The Court agrees with American: the errata is untimely and it will not rely on any of its assertions for the summary judgment determination.

The reason for this is two-fold: first, Sanchez's counsel offers the Court no factual data regarding their request to *American's counsel* for an extension to certify Sanchez's deposition testimony and second, Sanchez seems to misapprehend how American would be prejudiced by his reliance on this errata. The changes Sanchez seeks add in testimony, four months later, that would serve to manufacture a factual dispute that is not evident in the original deposition transcript.

Regarding deposition testimony, the rule provides: "On request, . . . the deponent shall have 30 days . . . to review the transcript . . . and, if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e). Also, "[the court reporter] must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period." *Id.*[9]

Here, similar to the deponent in *Reed v. Hernandez*, Sanchez attempted to make numerous "changes to his deposition answers" and "concedes the errata sheet [was] submitted outside the 30-day period allowed by Rule 30(e)." 114 F. App'x 609, 611 (5th Cir. 2004). It does not appear to the Court that Sanchez even complied with Veritext's internal requirements. *See* note 9, *supra*. It is evident to the Court that Sanchez's counsel failed to comply with the requirements of Rule 30(e). Moreover, because "Rule 30(e) does not provide any exceptions to its requirements" and

---

[8] Pl.'s Resp. Mot. to Strike 4, 7, ECF No. 122.

[9] Pl.'s App. Resp. Mot. for Summ. J. 350, 392, ECF No. 98 ("May 2, 2025 RE: White v. American Airlines DEPOSITION OF: Giram Sanchez Figueroa (#7320740) The above-referenced witness transcript is available for read and sign. Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those on the attached Errata Sheet. The witness should sign and notarize the attached Errata pages and return to Veritext at errata-tx@veritext.com. **According to applicable rules or agreements, if the witness fails to do so within the time allotted, a certified copy of the transcript may be used as if signed**. Yours, Veritext Legal Solutions.")

Sanchez proffers no compelling reason to manufacture such an exception, the Court GRANTS American's motion to strike the untimely deposition errata. *Id.*

**B. Request for Accommodation as Precondition to Failure-to-Accommodate Claim**

With the above in mind, the Court turns to the merits of Sanchez's failure-to-accommodate claim. "A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment." *Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agric. & Mech. Coll.*, 360 F. App'x 562, 565 (5th Cir. 2010). The ADA does prohibit discrimination from covered employers against a qualified individual on the basis of their disability. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020). Failure-to-accommodate is one form this prohibited discrimination can take. *Id.* However, this claim is distinct from other forms of prohibited discrimination because an individual can bring this claim without experiencing an adverse employment action. *See Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 71 (5th Cir. 2001) ("Although Bridges has suffered no adverse employment action, she may still raise a claim of discrimination based on the alleged failure reasonably to accommodate her disability.").

To succeed on a failure-to-accommodate claim, "a plaintiff must prove the following statutory elements: . . . (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Amedee*, 953 F.3d at 837. Here, the parties disputes whether Sanchez's anxiety—and its consequential limitations— were known by American. Often, an employer gains the requisite knowledge of an employee's disability through an explicit request for accommodation under the ADA. Sometimes, though, an employee's disability is readily apparent without the need for an employee to first make a

request—e.g. an employee being wheelchair-bound. *See Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017).

When "the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, *the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.*" *Id.* (emphasis added). Therefore, to survive summary judgment, Sanchez needs to demonstrate to the Court that a genuine dispute of material fact exists regarding (1) his identification of his anxiety, (2) the resulting limitations of his anxiety, (3) what reasonable accommodations would help mitigate those limitations, and (4) that he communicated each of these to American. *See Way v. City of Missouri City*, 133 F.4th 509, 518 (5th Cir. 2025).

Sanchez fails to meet this standard. His deposition testimony is full of contradiction. First, he avers that his medication is "100 percent" effective at mitigating the effects of his anxiety, belying an inference that he is even disabled by his condition.[10] *See* 42 U.S.C. § 12102(1)(A) (defining disability to mean "a physical or mental impairment that substantially limits one or more major life activit[y] of [an] individual"). Then, he avers that some of his anxiety-related episodes were due to missing doses of his medication.[11] Sanchez states that during his employment with American he "wasn't sure if anxiety counted . . . as a sick condition. [He] was always concerned about the stigma that being anxious doesn't really count as much, if anything, so" he labelled his February 2023 absence as Unauthorized Time Off ("UTO").[12] He did the same thing in May 2023 but was advised a member of American's Time and Attendance team to code these types of absences as "sick" to limit the number of attendance points he would accrue per absence.[13]

---

[10] Pl.'s App. 70, ECF No. 98.
[11] *Id.* at 75.
[12] *Id.* at 76–77.
[13] *Id.* at 91–92.

Critically, Sanchez avers that "[he] never knew about ADA accommodations ever" and never received a medical certification from his doctor stating his anxiety constituted a disability within the meaning of the ADA.[14] *See* 42 U.S.C. § 12102(1)(A), (2)(A). It is not clear to the Court how Sanchez could have communicated the disability, its consequential limitations, and possible reasonable accommodations to his employer when he did not know that they may be covered by the ADA until after the extant suit was filed. Sanchez never submitted any of his doctor's notes to American while he was employed there.[15] Furthermore, each of the notes from Sanchez's physicians fail to mention "anxiety" as his reason for presenting at the doctor's office.[16]

Lastly, Sanchez never spoke to someone in management at American about his need for accommodation.[17] The facts in the record do not indicate that Gail McLean, a member of American's Time and Attendance team, had the authority to provide Sanchez with an accommodation under the ADA. The record is silent on who Sanchez actually reported to during his tenure at American, which is interesting given that the attendance point system appears to be designed so that "[employees] and [their] managers will always be on the same page" about the employee's attendance.[18] Indeed, there are three different names—Gail McLean, Kaylin Artola, and Lawrence Idiata—listed on various attendance notices given to Sanchez throughout his time at American. Yet nothing in the record shows that these individuals would oversee Sanchez such that they would know the essential functions of his job and what could constitute a reasonable accommodation that would allow him to perform those functions. *See* 42 U.S.C. § 12112(a)(5)(A).

---

[14] *Id.* at 96–97.
[15] *Id.* at 145.
[16] *See id.* at 137, 139, 141.
[17] *See id.* at 176.
[18] Def.'s App. 51, ECF No. 86.

This absence of evidence places Sanchez's evidentiary showing well below that of the plaintiff in *Way*. Both parties misapprehend the crucial difference between Sanchez's case and *Way*. While it is true that the plaintiff in *Way* made her disability, limitations, and reasonable accommodation clear, she made these things evident to someone at the company with the ability to accommodate her, *namely her supervisor*. 133 F.4th 509, 519; *see also Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996) (employee informed his direct supervisor of his bipolar disorder); *Patton*, 874 F.3d 437, 444–45 (employee informed his direct supervisor of his anxiety).

Here, the order of events is telling. Sanchez did not inform anyone at American about his disability until he was called into a meeting with McLean regarding his accrued attendance points. Only when he was rapidly escalating through American's attendance policy did he explain that some of the accrued absences were due to anxiety, others the flu, and still others a leg injury incurred while on duty.[19] Even assuming that McLean was the proper person to begin the ADA accommodation process with, Sanchez's varied explanations for his absences are insufficient to place American on notice of a disability under *Patton*. 874 F.3d 437, 444-45. There, the Fifth Circuit reiterated that an employer's knowledge requires not simply an assertion of a disability, but a communication of the limitations caused by that disability and a way to reasonably accommodate them:

> In the case of a mental disability . . . specificity in attributing a work limitation to a disability is particularly important. [The employee] did not tell [the employer] that his disability *caused* his noise sensitivity, nor was this causal relationship obvious. Accordingly, as the district court held, [the employee] "has not created a genuine dispute of fact that he adequately linked office noise to an aggravation of his disability, which in turn gave rise to a workplace limitation for which [the employer] should have been aware."

---

[19] *See generally* notes 15–17 *supra*.

*Id.* at 445. Sanchez has offered no evidence showing how American could have accommodated him because he has offered no evidence showing that American was aware that his anxiety caused a workplace limitation requiring that accommodation. Without this evidence, Sanchez cannot make out a failure-to-accommodate claim. American is entitled to summary judgment. Because his failure to request accommodation is sufficient to dispose of Sanchez's claim, the Court does not address American's other arguments for summary judgment. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 485 (5th Cir. 2023).

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment is **GRANTED**. Sanchez's sole claim is **DISMISSED with prejudice**.

**SO ORDERED** on this **11th day** of **August, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**