**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SANTRISE WHITE, ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-CV-00935-O** |
| | § | |
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant American Airlines, Inc.'s Motion for Summary Judgment (ECF No. 107), Plaintiff Monique Springer's Response (ECF No. 117), and Defendant's Reply (ECF No. 125). Having considered the parties' briefing and the applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND[1]

This case presents an employment discrimination dispute between a group of current and former employees, including Springer, and their employer ("American"). Springer is a current employee of American, who works as a Customer Assistance Representative at the Dallas Fort Worth International Airport. She suffers from periodic migraines following a car accident during her childhood. When a migraine arises, Springer needs to step away from her job for either extended breaks or multi-day absences due to symptoms like nausea, ear ringing, and shaking. Her symptoms do not occur regularly, and these absences are often unexpected and unplanned.

American, as a nationwide employer, is subject to various employment laws, including the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").

[1] The Court's recitation of the facts is taken from the parties' summary judgment briefing.

However, not every American employee is covered under the FMLA due to certain requirements around hours worked per year and time employed at American. Because of this, American provides a Medical Leave of Absence ("MLOA") policy that allows an employee, who might not qualify for FMLA leave, to receive excused absences from American's various attendance policies.

Springer began working for American in 2022. She had migraines in her initial position but was able to manage her symptoms with short breaks. Once she transferred to her Customer Assistance Representative position in 2023, however, she began to accrue attendance points. Springer's position as a Customer Assistance Representative has a progressive attendance policy, meaning that as an employee accrues more unexcused absences, she receives progressively worse disciplinary action, up to and including termination. Springer sought to have some attendance points removed under the MLOA policy, because as a part time employee, she is not covered under the FMLA. In February 2024, all migraine-related attendance points were removed from Springer's record. The parties do not dispute that Springer has not experienced the onset of a migraine while at work since February 2024 and if she needs to be away from work for a migraine, she uses MLOA without issue.

Plaintiffs filed suit in September 2023 in the Western District of Texas. The case was transferred to this Court in September 2024. The Plaintiffs filed an amended complaint, adding Springer, in March 2025. The Plaintiffs moved to certify a class of American employees who, as alleged, suffered discrimination under the ADA. The Court denied class certification, finding that the class was not ascertainable and that the six named plaintiffs were too disparate in job title, disability, and proposed accommodation to warrant class certification. The six plaintiffs then proceeded on an individual basis. Springer brings a solitary claim against American: the failure to

accommodate her migraines, an unlawful act under the ADA.[2] American has moved for summary judgment.[3] The Motion is ripe for review.

## II. LEGAL STANDARD

A movant is entitled to summary judgment if by the pleadings and evidence it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*

A party seeking summary judgment must inform a court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

## III. ANALYSIS

Defendant moves for summary judgment on the basis that Springer's claim under the ADA for failure to accommodate her migraines is doomed because she never requested an accommodation.[4] Springer responds that she repeatedly notified American of her disability and her need for accommodation and accuses American of failing to engage in the interactive process

[2] Amended Compl., ECF No. 39.
[3] *See* Def.'s Mot. Summ. J., ECF No. 107.
[4] Def.'s Brief in Supp. of Mot. Summ J. 2, ECF No. 108.

by "forcing" him to take FMLA or MLOA leave instead of exempting her from the attendance policy for any absence related to her migraines. In reply, American argues that Sanchez's position on requesting his accommodation is self-defeating as the only evidence in the record reflecting he made the request is his untimely errata.[5]

For the reasons explained below, the Court **GRANTS** American's Motion for Summary Judgment as to Sanchez's claim.

**A. Request for Accommodation as Precondition to Failure-to-Accommodate Claim**

"A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment." *Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agric. & Mech. Coll.*, 360 F. App'x 562, 565 (5th Cir. 2010). The ADA prohibits discrimination from covered employers against a qualified individual on the basis of their disability. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020). Failure-to-accommodate is one form this prohibited discrimination can take. *Id.* However, this claim is distinct from other forms of prohibited discrimination because an individual can bring this claim without experiencing an adverse employment action. *See Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 71 (5th Cir. 2001) ("Although Bridges has suffered no adverse employment action, she may still raise a claim of discrimination based on the alleged failure reasonably to accommodate her disability.").

To succeed on a failure-to-accommodate claim, "a plaintiff must prove the following statutory elements: . . . (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Amedee*, 953 F.3d at 837. Here, the parties dispute whether Springer's migraines—and the consequential limitations

[5] Def.'s Reply Mot. Summ. J. 8, ECF No. 113.

they cause—were known by American. Often, an employer gains the requisite knowledge of an employee's disability through an explicit request for accommodation under the ADA. Sometimes, though, an employee's disability and workplace limitation is readily apparent without the need for an employee to first make a request for accommodation—e.g. an employee being wheelchair-bound. *See Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017).

When "the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, *the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.*" *Id.* (emphasis added). Therefore, to survive summary judgment, Springer needs to demonstrate to the Court that a genuine dispute of material fact exists regarding (1) her identification of her migraines as a disability, (2) the resulting workplace limitations of her migraines, (3) what reasonable accommodations would help mitigate those limitations, and (4) that she communicated each of these to American. *See Way v. City of Missouri City*, 133 F.4th 509, 518 (5th Cir. 2025).

Springer fails to satisfy this last element, which ultimately dooms her failure-to-accommodate claim. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 485 (5th Cir. 2023). She concedes that she never followed American's internal policy to fill out an accommodation request form. In response, she argues that a singular conversation with Gail McLean, a Time and Attendance team member, in which she mentioned that some of her accrued absences were due to her having migraines was sufficient to place American on notice of her disability, her workplace limitations, and potential accommodations. Alternatively, she argues that the filing of this lawsuit was sufficient to put American on notice. Both arguments fail.

First, Springer testified that she never spoke to someone in management at American about her need for accommodation.[6] The facts in the record do not indicate that McLean had the authority to provide Springer with an accommodation under the ADA. The record is silent on who Springer actually reports to at American, which is interesting given that the attendance point policy appears designed to give transparency to employees and their supervisors. Indeed, nothing in the record shows that McLean would oversee Springer such that she would know the essential functions of Springer job and what could constitute a reasonable accommodation that would allow her to perform those functions. *See* 42 U.S.C. § 12112(a)(5)(A).

This absence of evidence places Springer's evidentiary showing well below that of the plaintiff in *Way*. As the Court has stated previously, both parties misapprehend the crucial difference between Springer's case and *Way*. While it is true that the plaintiff in *Way* made her disability, limitations, and reasonable accommodation clear, she made these things evident to someone at the company with the ability to accommodate her, *namely her supervisor*. 133 F.4th 509, 519; *see also Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996) (employee informed his direct supervisor of his bipolar disorder); *Patton*, 874 F.3d 437, 444–45 (employee informed his direct supervisor of his anxiety).

The record reflects that Springer did not inform anyone at American about her disability until she was called into a meeting with McLean regarding her accrued attendance points. Only after accruing 43 absences did Springer explain that some of the absences were due to migraines, others the flu, and still others a hysterectomy.[7] Even assuming that McLean was the proper person to begin the ADA accommodation process with, Springer's varied explanations for her absences are insufficient to place American on notice of a disability under *Patton*. 874 F.3d 437, 444-45.

[6] Def.'s App. 342–43, ECF No. 109.
[7] *See* Def.'s Brief in Supp. of Mot. for Summ. J. 14, ECF No. 108.

There, the Fifth Circuit reiterated that an employer's knowledge requires not simply an assertion of a disability, but a communication of the limitations caused by that particular disability and a way to reasonably accommodate them:

> In the case of a mental disability . . . specificity in attributing a work limitation to a disability is particularly important. [The employee] did not tell [the employer] that his disability *caused* his noise sensitivity, nor was this causal relationship obvious. Accordingly, as the district court held, [the employee] "has not created a genuine dispute of fact that he adequately linked office noise to an aggravation of his disability, which in turn gave rise to a workplace limitation for which [the employer] should have been aware."

*Id.* at 445. Springer has offered no evidence showing how American could have accommodated her because she has offered no evidence showing that American was aware that her migraines caused a workplace limitation requiring accommodation. The only facts in the record demonstrate that her migraines prevented her from being able to attend work regularly. Without evidence connecting her disability to a workplace limitation, Springer cannot make out a failure-to-accommodate claim. American is entitled to summary judgment.

Even though her failure to request accommodation is sufficient to dispose of Springer's claim, the Court will address Springer's other arguments against summary judgment. This lawsuit cannot serve to place American on notice of her disability, the limitations it causes, and the ways she would be reasonably accommodated. Among many reasons, this is because her lawsuit lists numerous conditions that could be disabling and could be accommodated in numerous different ways.[8] It is also logically inconsistent. An employer's duty to accommodate an employee's disability can only arise when the employer knows about the disability. *See Way*, 133 F.4th at 518. To accept Springer's position would mean that any employee could impute ADA liability to an

---

[8] First Amended Compl. 22, ECF No. 39 (listing depression, brain cancer, and chronic migraines as Springer's disabilities). The Court notes that her EEOC Charge lists breast cancer, either in addition to or in lieu of, brain cancer as a disabling condition. *See* Def. App. 398, ECF 109.

employer by stating a medical condition aloud in any conversation with any other employee of the company, file a charge of discrimination, and then sue the employer. This is not the purpose of the ADA. The purpose of the ADA is to robustly protect an employee, who is open with her disabilities and the accompanying need for accommodation, to allow for an open dialogue between the employer and employee to keep the disabled employee "fully participat[ing]" in the workplace. *See* 42 U.S.C. § 12101.

To this end, Springer's argument that a request for medical leave under MLOA is a request for accommodation under the ADA similarly fails. American's MLOA policy provides a mechanism for employees who do not meet statutory requirements for coverage under the FMLA to be afforded medical leave while employed at American. It is evident that Springer's migraines have caused her to be away from her work at American.[9] Springer and American disagree whether Springer must use MLOA for her absences or if, assuming *arguendo* that she had made a request for accommodation under the ADA, she should receive a hypothetical different accommodation.[10] The guidance could not be more clear: Springer is not entitled to her preferred accommodation and if MLOA would provide her the requested accommodation—namely, leave—then, American has not harmed her. U.S. EQUAL EMP'T OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT, 2002 WL 31994335, at *14–17 (explaining that an employer need not provide leave at all if another accommodation would allow the employee to remain on the job and, critically, in note 59, "Employers should remember that many employees eligible for FMLA leave *will not be entitled to leave as a reasonable accommodation under the ADA*[.]"). Although she

---

[9] Pl.'s Resp. 21, ECF No. 118.

[10] *See id.* 20. ("American Airlines Slammed the Door on the Interactive Process by Telling Ms. Springer that FMLA and MLOA Was Her Only Option").

does not meet the requirements for FMLA, she does meet the requirements for the internal-to-American MLOA policy. Therefore, Springer is entitled to nothing more than MLOA leave to cover her absences. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017).

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment is **GRANTED**. Monique Springer's claim is **DISMISSED with prejudice**. Springer's Motion to Extend Time to File Jury Instructions (ECF No. 137) and Springer's First Motion in Limine (ECF No. 138) are **DENIED as moot**.

**SO ORDERED** on this **12th day** of **August, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**